IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JANIS L. BROWN, Individually and as Personal Representative of the Estate of JASON RAY BROWN, Deceased, and BILLY RAY BROWN,<br>Plaintiffs,<br><br>VS.<br><br>WICHITA COUNTY, TEXAS, THOMAS J. CALLAHAN, Sheriff of Wichita County, Texas, in his Individual and Official Capacity, DANIEL H. BOLIN, M.D., in his Individual and Official Capacity, KAYE KRAJCA, in her Individual and Official Capacity, MICHELLE GEORGE, in her Individual and Official Capacity, ROSE INGRAM, in her Individual and Official Capacity, DICKEY LEE SOURS, JR., in his Individual and Official Capacity, BLAINE GREENE, in his Individual and Official Capacity, WILLIAM YEAGER, in his Individual and Official Capacity, GARY WHATLEY, in his Individual and Official Capacity, JAMES GEARY, in his Individual and Official Capacity, WESLEY DICKERMAN, in his Individual and Official Capacity, and WAYNE PARISH, in his Individual and Official Capacity,<br>Defendants. | §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ | CIVIL ACTION NO.<br><br>7:05-CV-0108-R<br><br>**ECF** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Daniel Bolin's Motion for Summary Judgment (filed August 2, 2007) (Dkt. No. 78). After careful consideration of all parties' submissions and the law applicable to the issues before the Court, the Court **GRANTS** this Motion.

**I. BACKGROUND**

Plaintiffs Janis L. Brown, individually and as personal representative of the Estate of Jason Brown, deceased, and Billy Ray Brown filed suit against, Daniel H. Bolin (Dr. Bolin), contract physician for Wichita County Jail, individually and in his official capacity, among other defendants associated with the jail. Plaintiffs seek to hold Dr. Bolin liable for damages under 42 U.S.C. § 1983 claiming that Jason Brown's Fourteenth Amendment due process rights were violated when he was denied medical care while in custody of the Wichita County Jail.[1]

Jason Brown was arrested on Thursday, July 22, 2004 for narcotics-related charges by the Burkburnett Police Department. At this time, Dr. Bolin served as the contracting physician and supervisor of the nursing staff of the Wichita County Jail. Michelle George, Rose Ingram, and Kaye Krajca served as the jail nursing staff. During his book-in, Brown notified the officers of his medical conditions, including auto immune chronic hepatitis, esophageal varices, jaundice, spelenomegaly, and anemia.

A few hours later, Brown complained to the detention officers that he did not feel well and was regurgitating blood. The detention officers notified Nurse George who attempted to contact Brown's treating physician but was unsuccessful. She also contacted his pharmacy and was informed that his prescriptions had not been filled since January 2004. Nurse George checked Brown's vital signs and noted in her nurse report that Brown was in no immediate distress except for complaints of nausea.

The following night, Friday, July 23, 2004, Brown's fellow inmates notified Detention

---

[1] Although Plaintiff has brought this action pursuant to both Fourth and Fourteenth Amendment violations, Plaintiffs have asserted no facts to support a Fourth Amendment violation. Therefore, the Court declines to address it. *See* Plaintiff's First Amended Complaint, paragraph 2.1.

Officers Dickey Lee Sours and Blaine Green via the emergency call button that Brown was again regurgitating blood. Officer Sours reports that he observed a large puddle of blood near Brown, and Brown informed the officers of his complicated medical history. This incident was reported to Nurse Krajca who prescribed a liquid antacid per Dr. Bolin's standing orders.

Between the hours of 12:00 a.m. and 2:00 a.m., inmates again called Officers Sours and Greene notifying them that Brown was in severe pain and requesting help. The officers in turn notified Nurse Krajca. Nurse Krajca directed the detention officers to administer a phenerghan suppository for nausea per Dr. Bolin's standing orders. The officers were unable to do so because Brown was incoherent. Nurse Krajca was notified, and when she arrived, Brown was taken to medical solitary where she administered the medication. There is some dispute between the officers and Nurse Krajca as to whether Brown was responsive and alert at this time.

On Saturday, July 24, 2004 between 3:12 a.m and 11:30 p.m., Defendants, Officers WilliamYeager, Gary Whatley, James Geary, Wesley Dickerman and Wayne Parish allegedly monitored Brown through a slot in the cell door. At approximately 11:30 p.m., Brown is found unresponsive and pulseless by two detention officers. Nurse Krajca advised the officers to call emergency services. The medical response team reported that Brown had expired quite some time prior to their arrival.

Dr. Bolin was neither present nor was he notified at any time during the entire incident.

Plaintiffs filed suit against all Defendants under 42 U.S.C. § 1983 alleging Fourteenth amendment constitutional violations. Specifically, Plaintiffs claim Dr. Bolin implemented unconstitutional policies that caused Brown's death because he (1) failed to supervise and instruct the nursing staff, and (2) created barriers to supervision and proper medical treatment.

On August 2, 2007, Dr. Bolin filed a Motion for Summary Judgment on all of Brown's claims.

## II. ANALYSIS

Plaintiffs assert that Dr. Bolin violated Brown's Fourteenth Amendment rights under 42 U.S.C. §1983. Dr. Bolin argues there is no evidence he implemented a policy that caused a violation of Brown's constitutional rights, and he is protected by qualified immunity. Plaintiff argues Dr. Bolin is not entitled to qualified immunity as a contract physician. Further, if he were entitled, this defense is overcome with the evidence that he implemented unconstitutional policies. The court GRANTS Dr. Bolin's Motion for Summary Judgment as Plaintiff has produced insufficient evidence that Dr. Bolin implemented a policy that caused a violation of Brown's constitutional rights.

### A. Summary Judgment Standard

Summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . ." FED. R. CIV. P. 56(c). An issue is material if it involves a fact that might affect the outcome of a suit under governing law. *See Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The court must decide all reasonable doubts and inferences in the light most favorable to the non-moving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has satisfied this burden, the non-moving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The court must inquire as to whether there is sufficient evidence upon which reasonable jurors could properly find by a preponderance of the evidence that plaintiff is entitled to a verdict. *Anderson*, 477 U.S. at 249-50. In other words, summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A "sufficient showing" consists of more than a scintilla of evidence in support of the moving party's position. *Anderson*, 477 U.S. at 249-50; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986) (stating that "conjecture alone" was insufficient to raise an issue as to existence of an essential element).

**B.     Qualified Immunity Standard**

The doctrine of qualified immunity shields government employees who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). The threshold question is whether, on the plaintiff's version of the facts, the officer's conduct violated a currently-existing constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citing *Saucier v. Katz,* 533 U.S. 194, 200 (2001)). If the plaintiff fails to allege a constitutional violation, then the defendant is entitled to qualified immunity and the court need not inquire any further. *Id.* at 201. If, however, the plaintiff has shown a violation of a constitutional right, the court must then determine whether the defendant's actions were "objectively reasonable" in light of "clearly established law" at the time of the alleged violation. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

**C.     Dr. Bolin is entitled to the defense of qualified immunity.**

Dr. Bolin has raised qualified immunity as a defense to Brown's 42 U.S.C. § 1983 claims against him in his official and individual capacities. Dr. Bolin is a private physician who has contracted with Wichita County to provide medical services at the jail. In this capacity, he is acting under color of state law for purposes of § 1983 and is entitled to the defense of qualified immunity. *West v. Atkins*, 487 U.S. 42, 56 (1988). The fact that Dr. Bolin is a contract physician does not alleviate his entitlement to the qualified immunity defense as Plaintiff suggests. *Chauncey v. Evans*, No. 2:01-CV-0445, 2003 WL 21730580, at *2 (N.D. Tex. Feb. 11, 2003). In order to overcome this defense, Plaintiff must prove Dr. Bolin violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).

**D.     Plaintiff has produced insufficient evidence that Dr. Bolin violated Brown's constitutional rights.**

Plaintiffs have produced insufficient evidence that Dr. Bolin implemented an unconstitutional policy or custom that causally related to the deprivation of Brown's constitutional rights and his subsequent death. Pretrial detainees have a constitutional right under the Due Process

clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference.[2] In order to state a colorable claim for the denial of medical care under Section 1983, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference" occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993).

*Supervisory Liability*

In the present case, Plaintiffs seek to hold Dr. Bolin liable in his supervisory capacity of the nurse jail staff as he was neither present nor notified during the incidents surrounding Brown's death. It is well settled law that supervisory personnel cannot be held vicariously liable under § 1983 for the acts of their subordinates under the theory of respondeat superior. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, to state a valid claim against a supervisory official like Dr. Bolin, a plaintiff must establish a causal connection between the acts or omissions of the defendant and the resulting constitutional deprivation. *See, e.g.*, *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir.1995) (per curiam); *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir.1981).

---

[2] The deliberate indifference standard, generally applicable only to convicted inmates, also applies to pretrial detainees who complain of an episodic act or omission with respect to medical care and protection from harm. *Calton v. Dallas County*, No. 3:05-CV-2022-N, 2007 WL 2453641, at *5 n.2 (N.D. Tex. August 27, 2007).

An inmate seeking to hold a supervisor liable for deliberate indifference to the inmate's medical needs may show that the supervisor "promulgated or failed to promulgate policies" that manifested deliberate indifference toward the serious medical needs of prisoners or detainees. *Thompson*, 245 F.3d at 459. The policy must be the moving force of the constitutional violation. *Monell*, 436 U.S. at 694. A supervisor may also be held liable under § 1983 for failure to properly supervise and train subordinate officers who cause a deprivation of constitutional rights. *Wever v. Lincoln County*, 388 F.3d 601, 606-07 (8th Cir. 2004). The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. *Id*. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *Id.*

*Claims against Dr. Bolin*

Plaintiffs concede that Dr. Bolin did not affirmatively participate in acts leading up to the plaintiff's injury but instead assert both inadequate supervision and unconstitutional policy claims. Namely, Dr. Bolin, failed to supervise and instruct the nursing staff in their professional responsibilities; and he created a policy or custom of discouraging nurses from seeking his guidance thus creating barriers to medical treatment, consequently leading to Brown's death. Plaintiff's supporting evidence includes: (1) Dr. Bolin's standing orders which allowed the jail nurse staff to assess patients and prescribe and administer medications without supervision, (2) Dr. Bolin's admission that he rarely conducted staff meetings, (3) Dr. Bolin's admission that he would get irritated from receiving certain calls at late hours from nursing staff, (4) Wichita County Sheriff Thomas Callahan's testimony that nurses complained about Dr. Bolin's "grumpiness," and (5) Nurse Krajca's statement that she would receive a reprimand from Dr. Bolin if she called him concerning

Brown's condition.

Plaintiff's proffered evidence is insufficient. The record reveals that the standing orders allowed nurses to give medications for basic symptoms such as nausea, sore throat, severe pain, etc. In more serious instances, the document directs the nurses to contact the physician for further orders.[3] Additionally, the record reveals that Dr. Bolin only admitted to getting irritated when he is called at late hours for basic non-emergency issues.[4] Although there is some deposition testimony that Dr. Bolin had a reputation for being cross when contacted by the nurses during late hours, Sherriff Callahan addressed this issue with Dr. Bolin only a few times during the last ten to twelve years.[5] Further, Sherriff Callahan stated that he did not believe the nurses were reluctant to call Dr. Bolin for medical emergencies.[6]

The evidence in this case simply does not support deliberate indifference on the part of Dr. Bolin. Supervisory liability exists when a supervisor implements a policy so deficient, that the policy itself is a repudiation of constitutional rights. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *Id.*; *see also*, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985). Plaintiff's have failed to prove that emergency medical care was denied to any other inmate, or that Dr. Bolin was otherwise actually informed or consciously believed that the standing orders or infrequent staff meetings would expose prisoners to substantial risk of serious unmet medial needs. *See Thompkins*, 828 F.2d at 305.

---

[3] Plaintiff's Exhibit U/Appendix 152-154; Plaintiff's Exhibit V/Appendix 155-158.

[4] Plaintiff's Exhibit X; Bolin Depo., pg. 230, Line 4-10.

[5] Plaintiff's Exhibit Y; Callahan Depo., pg. 269, Line 17.

[6] *Id.*

Additionally, this Court finds that Plaintiff has presented no substantial evidence that the jail's policy was constitutionally defective at the time of the incident. *Compare Ruiz v. Estelle*, 679 F.2d 1115, 1149-50 (5th Cir.) (describing constitutionally defective system for medical care of inmates where untrained inmates performed major medical procedures such as surgery, and the number of physicians was inadequate). The Court does not find that the standing orders are unreasonable or a violation of constitutional rights, and there is insufficient evidence that Dr. Bolin's attitude towards the nurses created a deliberate indifference to medical needs. Plaintiff has not presented sufficient evidence of a deliberate and systematic lack of adequate care for detainees required to preserve a Fourteenth Amendment violation. *See Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182, 1187 (5th Cir. 1986). Therefore, Dr. Bolin can not be held liable on the theory that he implemented an unconstitutional policy.

Because Plaintiffs failed to allege a constitutional violation, Dr. Bolin is entitled to qualified immunity and the court need not inquire any further. *Saucier*, 533 U.S. at 201.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Dr. Bolin's Motion for Summary Judgment on all of Plaintiff's constitutional claims. Daniel Bolin is hereby dismissed from this action.

**It is so ORDERED.**

**ENTERED: April 9, 2008.**

_____
**JERRY BUCHMEYER,**
**SENIOR U.S. DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**