# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JANIS L. BROWN, Individually and as Personal Representative of the Estate of JASON RAY BROWN, Deceased, and BILLY RAY BROWN, <br>     Plaintiffs, <br><br> VS. <br><br> WICHITA COUNTY, TEXAS, THOMAS J. CALLAHAN, Sheriff of Wichita County, Texas, in his Individual and Official Capacity, DANIEL H. BOLIN, M.D., in his Individual and Official Capacity, KAYE KRAJCA, in her Individual and Official Capacity, MICHELLE GEORGE, in her Individual and Official Capacity, ROSE INGRAM, in her Individual and Official Capacity, DICKEY LEE SOURS, JR., in his Individual and Official Capacity, BLAINE GREENE, in his Individual and Official Capacity, WILLIAM YEAGER, in his Individual and Official Capacity, GARY WHATLEY, in his Individual and Official Capacity, JAMES GEARY, in his Individual and Official Capacity, WESLEY DICKERMAN, in his Individual and Official Capacity, and WAYNE PARISH, in his Individual and Official Capacity, <br>     Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br><br> 7:05-CV-0108-O-KA <br><br> **ECF** |

## MEMORANDUM OPINION AND ORDER

  Before the Court is Defendant Wichita County's Motion for Summary Judgment (filed February 29, 2008) (Dkt. No. 126). After careful consideration of all parties' submissions and the law applicable to the issues before the Court, the Court **GRANTS** this Motion.

# I. BACKGROUND

Parents of Jason Brown, deceased, Billy Ray Brown and Janis L. Brown, individually and as personal representative of the Estate of Jason Brown, filed suit against Wichita County, Texas along with other defendants associated with the Wichita County Jail. Plaintiffs seek to hold Wichita County liable for damages under 42 U.S.C. § 1983 claiming that their son, Jason Brown, suffered violations of his Fourteenth Amendment due process rights when he was denied medical care while in custody of the Wichita County Jail.[1]

Jason Brown was arrested on Thursday, July 22, 2004 on narcotics-related charges by the Burkburnett Police Department and was taken to the Wichita County Jail. At this time, Dr. Bolin served as the contracting physician and supervisor of the nursing staff at the jail. Michelle George, Rose Ingram, and Kaye Krajca served as the jail nursing staff. During the intake process, Brown notified the officers of his medical conditions, including auto immune chronic hepatitis, esophageal varices, jaundice, spelenomegaly, and anemia.

A few hours later, Brown complained to the detention officers that he did not feel well and was regurgitating blood. The detention officers notified Nurse George who attempted to contact Brown's treating physician but was unsuccessful. She also contacted his pharmacy and was informed that his prescriptions had not been filled since January 2004. Nurse George checked Brown's vital signs and noted in her nurse report that Brown was in no immediate distress except for complaints of nausea.

---

[1] Although Plaintiffs have brought this action pursuant to both Fourth and Fourteenth Amendment violations, they have asserted no facts to support a Fourth Amendment violation. Therefore, the Court declines to address it. *See* Plaintiffs First Amended Complaint, paragraph 2.1.

The following night, Friday, July 23, 2004, Brown's fellow inmates notified Detention Officers Dickey Lee Sours and Blaine Green via the emergency call button that Brown was again regurgitating blood. The officers reported that they observed a large puddle of blood near Brown, and Brown informed them of his complicated medical history, including his gastric ulcers and multiple blood transfusions. As there was no nurse on duty at the time, the control room officer called Nurse Krajca at home and reported the incident. Nurse Krajca ordered Brown be given Alamag, a liquid antacid, per Dr. Bolin's standing orders.

Early Saturday morning, between the hours of 12:00 a.m. and 2:00 a.m., inmates again called Officers Sours and Greene notifying them that Brown was in severe pain and requesting help. Officer Sours called Nurse Krajca at her home informing her that Brown had regurgitated blood. He also relayed to her that Brown had missed an appointment to see a gastroenterologist before coming to jail. She directed the officers to administer a phenerghan suppository for nausea per Dr. Bolin's standing orders. The officers were unable to do so because Brown was incoherent. Nurse Krajca was again notified, and she decided to come to the jail.

Upon her arrival, Brown was incoherent and unresponsive. However, he did inform Nurse Krajca of his various medical problems. Nurse Krajca took Brown to a medical solitary cell where she administered phenergan using the aid of Officers Sours and Greene to lift Brown. She witnessed Brown regurgitate once again, but noted in her nurse report that the substance did not appear to contain any blood. Nurse Krajca placed Brown on doctor's call for Monday morning, ordered the officers to observe Brown, and left the building.

On Saturday, between 3:12 a.m and 11:30 p.m., Defendants, Officers William Yeager, Gary Whatley, James Geary, Wesley Dickerman and Wayne Parish allegedly monitored Brown through

a slot in the cell door. At approximately 11:30 p.m., Brown was found unresponsive and pulseless by two detention officers. Nurse Krajca was called, and she advised the officers to call emergency services. The medical response team reported that Brown had expired quite some time prior to their arrival. The autopsy report revealed Brown suffered from a massive gastrointestinal hemorrhage due to rupture of the esophageal varices caused by chronic viral hepatitis and cirrhosis of the liver.[2]

Plaintiffs filed suit against all Defendants under 42 U.S.C. § 1983 alleging Fourteenth amendment constitutional violations. Specifically, Plaintiffs claim Wichita County implemented unconstitutional policies that caused Brown's death because the county (1) maintained deficient policies and practices regarding inmate medical care, (2) failed to train and supervise jail staff, and (3) had a policy of discouraging nurses from providing inmates with emergency medical care.

On February 29, 2008, Wichita County filed a Motion for Summary Judgment on all of Brown's claims.

## II. ANALYSIS

Plaintiffs assert that Wichita County's policies caused the violation of Brown's Fourteenth Amendment rights under 42 U.S.C. § 1983. Wichita County argues that no Wichita County Defendant violated Brown's rights, and no Wichita County policy, practice, or custom was the moving force behind a violation of Brown's rights. The Court GRANTS Wichita County's Motion for Summary Judgment as Plaintiffs have produced insufficient evidence that any Wichita County policy was causally related to the alleged violation of Brown's constitutional rights.

---

[2] Jt. App. 73.

A.      **Summary Judgment Standard**

Summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . ." FED. R. CIV. P. 56(c). An issue is material if it involves a fact that might affect the outcome of a suit under governing law. *See Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The court must decide all reasonable doubts and inferences in the light most favorable to the non-moving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has satisfied this burden, the non-moving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The court must inquire as to whether there is sufficient evidence upon which reasonable jurors could properly find by a preponderance of the evidence that plaintiff is entitled to a verdict.

*Anderson*, 477 U.S. at 249-50.  In other words, summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  A "sufficient showing" consists of more than a scintilla of evidence in support of the moving party's position.  *Anderson*, 477 U.S. at 249-50; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986) (stating that "conjecture alone" was insufficient to raise an issue as to existence of an essential element).

**B.     Plaintiffs have alleged an episodic act or omissions case**

Although Plaintiffs attempt to make a conditions of confinement claim, this case is properly classified under an episodic acts or omission theory. To determine the appropriate standard to apply in analyzing constitutional challenges brought by pretrial detainees under § 1983, the Fifth Circuit has directed courts first to classify the challenge as an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir.1997) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996)). In a condition of confinement case, the constitutional challenge is to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644.  In these cases intent is presumed, and the reasonable relationship test of *Bell v. Wolfish* is applied. 441 U.S. 520 (1979). Under *Wolfish*, a constitutional violation exists if the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective. *See Hare*, 74 F.3d at 640; *see also Scott v. Moore,* 114 F. 3d 51, 53 (5th Cir. 1997).  In contrast, in an "episodic act or omission" case, an actor is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality

6

that permitted or caused the act or omission. See *Hare*, 74 F.3d at 645; *see also Johnson v. Johnson County*, No. 3:06-CV-10762, 2006 WL 1722570, at *3 (N.D. Tex. June 21, 2006).

Here, although Plaintiffs complain generally of inadequate staffing, record keeping, supervision, and training, the basis of the complaint is the acts or omissions of jail officials to render Brown proper medical care. Official actors are interposed between Brown and Wichita County, and Plaintiffs assert that official policies caused or permitted the general conditions. In jail condition cases, the conditions themselves constitute the harm. *See Scott v. Moore*, 114 F.3d at 53 n.2 (enumerating case examples of conditions of confinement cases including revocation of privileges, overcrowding, and extensive confinement). Here, however, Brown did not suffer from the mere existence of the alleged jail conditions, but from specific acts or omissions committed on but one occasion.

Because Plaintiffs' claims arise from the actions of the jail with respect to Brown's medical treatment, the Court determines that this is an episodic act or omission claim as Plaintiffs complain of "a particular act or omission of one or more officials." *See Hare*, 74 F.3d at 645. Plaintiffs must now show the deliberate indifference of individual County employees before the court considers the issue of whether there was any County policy or practice that may have been a moving force in Brown's alleged constitutional violation. *See McDonald v. Dallas County,* No. 3:06-CV-0771-L, 2008 WL 918286, at *4 (N.D. Tex. March 31, 2008).

**C.     Municipal liability standard under 42 U.S.C. § 1983**

Municipal liability on a claim brought under § 1983 requires proof of three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978);

*see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001). A plaintiff must establish a "direct causal link between the county's actions and the alleged constitutional deprivation." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). In this case, Brown must adduce evidence that would permit a reasonable jury to find that a Wichita County official violated Brown's clearly established constitutional rights with subjective deliberate indifference and that the violation resulted from a county policy or custom adopted or maintained with objective deliberate indifference. *See Flores*, 124 F.3d at 738; *see also Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-29 (5th Cir. 1999).

*1. Policymaker*

Plaintiffs have alleged that the applicable policymaker was Sheriff Callahan.[3] Wichita County has not disputed on summary judgment whether Callahan was the official policymaker regarding medical care at the jail. Therefore, this undisputed evidence is viewed in the light most favorable to Plaintiff, the non-movant. *See U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court therefore assumes for purposes of summary judgment that Plaintiffs have raised a genuine issue of material fact regarding the existence of a policymaker. The Court will next consider whether Plaintiffs have produced sufficient evidence to establish an official policy.

*2. Official Policy or Custom*

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a

---

[3]Plaintiffs Response, p. 11; Jt. App. 349-354; Callahan Deposition p. 60 ln. 7- p. 65 ln. 24.

federally protected right. *See Monell*, 436 U.S. at 694; *see also McDonald*, 2008 WL 918286, at *5. Municipal policy for purposes of § 1983 liability may be found in a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. *Webster v. City of Houston,* 735 F. 2d 838, 841 (5th Cir.1984). Alternatively, municipal policy under § 1983 can be a persistent, widespread practice of municipal officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Id*. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *Id*. If Plaintiffs establish a municipal policy, either express or customary, and it is facially unconstitutional, then the city may be held liable under § 1983 for a violation of constitutional rights caused by the policy. If it is facially constitutional, then Plaintiffs must demonstrate that the policy was promulgated with deliberate indifference to its known or obvious unconstitutional consequences. *Criswell v. City of Dallas, Texas*, No. 3:00-CV-0687-G, 2001 WL 609480, at *4 (N.D. Tex. May 29, 2001).

     Here, Brown claims both official policy and customs proximally caused the violation of his constitutional rights. Specifically, Plaintiffs argue that the official policy of the jail included the unlawful standing orders and a practice of L.V.N.'s diagnosing and prescribing medications in violation of the Texas Nurse Practices Act in accordance with those orders. Unofficial customs of the jail included (1) maintaining an inadequately trained staff, (2) a continued and systematic policy of inadequate record keeping, supervision, training, intake screening and follow-up care, (3) a custom and practice of non-adherence to the official Health Service Plan written by Sherriff

9

Callahan without medical training or supervision, (4) a custom of non-adherence to Dr. Bolin's contract to ensure quality control, and (5) a custom and practice of nurse intimidation by Dr. Bolin and discouragement from providing inmates with hospital emergency medical care.[4]

Plaintiffs have produced sufficient evidence that there may have been a custom of nurse intimidation and discouragement from seeking emergency medical care for inmates. Plaintiffs provide evidence that (1) Dr. Bolin admitted to getting irritated when he is called at late hours for basic non-emergency issues, (2) Sherriff Callahan's deposition testimony that Dr. Bolin had a reputation for being cross when contacted by the nurses during late hours, that he had received several complaints about Dr. Bolin's behavior, and that he had spoken with Dr. Bolin on three occasions about his demeanor,[5] (3) Affidavit testimony from two former Wichita County nurses stating they were chastised by Dr. Bolin when seeking medical instruction for inmates and he discouraged them from sending inmates to the hospital,[6] and (4) Nurse Krajca's statement that she would be reprimanded by Dr. Bolin if she sent Brown to the hospital.[7] Brown has alleged that there are prior incidents which, if taken as true, would reveal the existence of a custom on the part of Wichita County and knowledge of that practice by its policymaker Sherriff Callahan.

The Court construes Plaintiffs' remaining claims as alleged customs of inadequate training and supervision. As support for all other customs Plaintiffs complain generally that, (1) Dr. Bolin

---

[4] Plaintiffs' Response to Defendants' Motion for Summary Judgment, pp. 7-16

[5] Jt. App. 337-380; Callahan Depo., pg. 269, Line 17.

[6] Jt. App. 563-66; Jt. App. 559-562.

[7] Jt. App. 163.

did not draft the Health Services Plan according to his contract terms,[8] (2) Dr. Bolin did not hold meetings to discuss policies or administer evaluations for the nurses,[9] (3) Sherriff Callahan drafted the Health Services plan without consultation or review of a medical doctor, and the nurses were not aware of the plan,[10] and (4) Dr. Bolin failed to follow reporting requirements, and Sherriff Callahan never held meetings with Dr. Bolin according to contract terms.[11] Here, Plaintiffs have produced sufficient evidence of a widespread practice inadequate training and supervision and knowledge of this practice on the part of Sherriff Callahan.

Plaintiffs have identified the standing orders as an official policy of the jail. Additionally, Plaintiffs have produced sufficient evidence for a reasonable jury to find both a custom of nurse intimidation and discouragement and a custom of inadequate supervision and training. However, the Court finds that these policies are not facially unconstitutional. Therefore, Plaintiffs must show that the policies were promulgated with deliberate indifference. *See Flores*, 124 F.3d at 738.

*3. Underlying Constitutional Violation and Moving Force*

Finally, the Court must evaluate the third element of municipal liability-whether Brown suffered a violation of his constitutional right to medical care, and whether an official policy or practice of Wichita County was a "moving force" behind that violation. *See Piotrowski*, 237 F.3d at 578; *see also Stephens v. Dallas County, Tex.*, No. 3:05-CV-1009-K, 2007 WL 34827, at *6 (N.D. Tex. Jan. 4, 2007). Plaintiffs must provide proof that the policymakers deliberately chose

---

[8] Jt. App. 328.

[9] Jt. App. p. 327.

[10] Jt. App. 349-354.

[11] Jt. App. 329-32; 363-67.

11

measures that would prove inadequate. *Lawson v. Dallas County*, 112 F. Supp. 2d 616, 636 (N.D. Tex. 2000).

**a. Plaintiffs have presented sufficient evidence that Nurse Krajca's acts or omissions serve as an underlying constitutional violation.**

A party alleging that an episodic act or omission resulted in an unconstitutional violation of a pretrial detainee's Fourteenth Amendment rights is required to show that the official's action constituted "deliberate indifference."[12] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In order to state a colorable claim for the denial of medical care under § 1983, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. "Deliberate indifference" occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993).

Here, Plaintiffs argue that the acts or omissions of Nurse Krajca caused Brown's death due to her deliberate indifference to his serious medical needs when she failed to contact Dr. Bolin or transport Brown to the hospital. This court has already stated that Plaintiffs have raised a genuine

---

[12] The deliberate indifference standard, generally applicable only to convicted inmates, also applies to pretrial detainees who complain of an episodic act or omission with respect to medical care and protection from harm. *Calton v. Dallas County*, No. 3:05-CV-2022-N, 2007 WL 2453641, at *5 n.2 (N.D. Tex. August 27, 2007).

issue of material fact in regards to a constitutional violation by Nurse Krajca. [13] Although Plaintiffs have raised a genuine issue of material fact with respect to Nurse Krajca's subjective deliberate indifference, it is well settled law that a governmental entity cannot be held vicariously liable under § 1983 for the acts of their subordinates under the theory of respondeat superior or vicarious liability. *See Monell v. Dep't of Social Servs.*, 436 U.S. at 691. Therefore, we now move to the analysis of whether official policy was the moving force behind the alleged constitutional violation.

**b. Plaintiffs have produced insufficient evidence that a Wichita County policy was causally linked to Brown's alleged constitutional violation.**

*1.) Inadequate training and supervision*

Plaintiffs have failed to prove that inadequate training and supervision was a moving force behind the violation of Brown's constitutional rights. As previously stated, Plaintiffs argue that Wichita County failed to follow the contractual terms of its health services plan requiring supervision and training of nurses. However, failure to follow contractual terms is not, on its face, an unconstitutional policy. Further, Plaintiffs have not produced any evidence that Wichita County or its policymaker had actual knowledge that non-adherence to the contract provisions would result in a substantial risk of harm. *Compare McDonald v. Dallas County*, 2008 WL 918286, at *7 (finding sufficient evidence of a policy of inadequate medical care where County Commissioner acknowledged lack of medical care would lead to constitutional violations). An "inadequate" training program alone is not ordinarily the moving force behind an injured plaintiff's harm.

---

[13] *See* Court Memorandum Opinion and Order denying Kaye Krajca's Motion for summary judgment on Plaintiffs' Fourteenth Amendment Claims (May 20, 2008) (Dkt. 153).

13

*Grandstaff v. City of Borger, Tex.*, 767 F.2d 161,169 (5th Cir. 1985). Nor does it satisfy the causal link requirement to prove that a supervisor has failed to supervise employees. *Id.* Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality can a city be liable for such a failure under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Because Plaintiffs have failed to prove deliberate indifference on the part of Wichita County, the alleged customs of inadequate training and supervision fail to establish the causal link necessary to prove liability on the part of Wichita County.[14]

*2.) Standing orders*

The Court finds that the standing orders allowing nurses to prescribe medication were not a moving force behind Brown's alleged constitutional violation. Plaintiffs claim that without these standing orders, Nurse Krajca would have been required to call a physician rather than prescribing nausea medications. The record reveals that the standing orders allowed nurses to give medications for basic symptoms such as nausea, sore throat, severe pain, etc.[15] In more serious instances, such as Brown's alleged condition, the document clearly directs the nurses to contact the physician for further orders.[16] Plaintiffs present the affidavits of three experts stating that the standing orders allowed nurses to practice medicine in violation of the Texas Nurse Practices Act.[17] However, even if true, this does not prove the policy itself was the causal link to Brown's injury. *See Criswell,* 2001

---

[14] Plaintiffs also presents evidence of a subsequent inmate death at Wichita County jail under similar circumstances as support for a custom of inadequate procedures, training, and supervision. *See Plaintiffs Response*, p. 17; Jt. App. 567-572; Jt. App. 573-580. However, this evidence does not support actual knowledge of the inadequacy before the date of Brown's death.

[15] Jt. App. 264-65; Jt. App. 266-68.

[16] *Id.*

[17] Jt. App. 419-29; Jt. App. 430-43; Jt. App. 444-49; Jt. App. 550-58.

WL 609480, at *5 (stating that city's use of unconstitutional ordinances and penal provisions even after having been advised of the unconstitutionality of same, does not prove deliberate indifference). When seeking to prove a municipality's malevolent motive, plaintiffs must introduce more evidence than merely the opinion of an expert witness. *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998). In order to establish Wichita County's liability, Plaintiffs must show the standing order policy was so inadequate, obvious, and very likely to result in the violation of constitutional rights that the city can be said to have been deliberately indifferent. *City of Canton,* 489 U.S. at 390. Plaintiffs' proffered evidence is insufficient to prove the policy was the moving force behind the constitutional violation.

### *3.) Nurse Intimidation*

Lastly, the Court finds that the custom of nurse intimidation and discouragement from providing hospital emergency medical care was not the moving force behind Brown's constitutional violation. The only causal link Plaintiffs offer in this case is Nurse Krajca's statement that she would be reprimanded by Dr. Bolin if she sent Brown to the hospital.[18] According to Plaintiffs' version of the facts, there were several decisions made by Nurse Krajca regarding Brown's care prior to her lone statement concerning Dr. Bolin. Therefore, the Court can not conclude that Nurse Krajca's alleged deliberate indifference was motivated by the custom of nurse intimidation in Wichita County jail.

**D. Plaintiffs have produced insufficient evidence that a Wichita County policy was causally**

---

[18] Jt. App. 163.

**related to Brown's alleged constitutional violation.**

Although Plaintiffs have raised a genuine issue of material fact in regards to the constitutional violation and deliberate indifference on the part of county officials, they have produced insufficient evidence that Wichita County implemented an unconstitutional policy or custom that causally related to the deprivation of Brown's constitutional rights and his subsequent death. The facts alleged simply do not tend to show that the county had any such policy or custom that resulted in infringement of Brown's constitutional rights or that any policy or custom of the county was adopted or continued by its policymakers in deliberate indifference to the constitutional rights of its detainees. *See City of Canton*, 489 U.S. at 392. Plaintiffs have failed to prove an official policymaker, Sherriff Callahan, was otherwise actually informed or consciously believed that the standing orders, nurse intimidation, or inadequate training or supervision would expose prisoners to substantial risk of serious unmet medial needs. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1981). Further, this Court finds that Plaintiffs have presented no substantial evidence that the jail's policy was constitutionally defective at the time of the incident. *Cf. Ruiz v. Estelle*, 679 F.2d 1115, 1149-50 (5th Cir.) (describing constitutionally defective system for medical care of inmates where untrained inmates performed major medical procedures such as surgery, and the number of physicians was inadequate). Therefore, the Court finds that Plaintiffs have produced insufficient evidence that any Wichita County policy was causally related to Brown's constitutional violation.

**E. As a result of the dismissal of federal claims against Wichita County, Plaintiffs are not**

**entitled to damages for wrongful death under 42 U.S.C. § 1983.**

Wichita County seeks summary judgment as to Plaintiffs' claims for damages. Defendant argues that Plaintiffs, as parents of the deceased, may not recover exemplary damages. Wichita County also asserts that the Texas Wrongful Death statute precludes recovery against a Texas county. *See* Tex.Civ.Prac. & Rem.Code § 71.002(b).

Plaintiffs, as parents of the deceased, are not entitled to punitive damage claims. Under 42 U.S.C. § 1988, state claims of wrongful death and survival are incorporated, allowing parents a remedy for constitutional violations in a § 1983 action. *See Rhyne v. Henderson County*, 973 F.2d 386, 390 (5th Cir. 1992). Although parents may assert a claim under the Texas Wrongful Death Act, pursuant to the limitations imposed by Texas Constitution, Article 16, § 26, they are not entitled to recover punitive damages. Tex. Civ.Prac. & Rem.Code § 71.004; *see General Chem. Corp. v. De La Lastra*, 852 S.W. 2d 916, 923 (Tex. 1993). Further, § 1983 does not authorize punitive damages against local government entities. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

In a case brought solely under the state claim of the Texas Wrongful Death Act, counties are immune to suit. However, if the state claim is also brought in conjunction with a § 1983 action, the county is no longer immune, as any attempt to provide immunity over and above those already provided in § 1983 directly violates federal law. *See County of Dallas v. Sempe*, 151 S.W.3d 291, 299 (Tex. App.-Dallas, 2004). In this case, since the Court has dismissed all federal claims against Defendant, Wichita County is now immune to suit under the Act.

Therefore, the Court GRANTS summary judgment as to all of Plaintiffs claims for damages

that are barred or limited by Texas law as incorporated by 42 U.S.C. §1988.[19]

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Wichita County's Motion for Summary Judgment on all of Plaintiffs' Fourteenth Amendment constitutional claims and damage claims that are barred or limited by Texas law as incorporated by 42 U.S.C. § 1988. Wichita County is hereby dismissed from this action.

**SO ORDERED** on this 6th day of August, 2008.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**

---

[19] The Court does not dismiss punitive damages claims, if any, alleged by the Estate of Jason Brown. *See Gen. Chem. Corp. v. De La Lastra*, 852 S.W. 2d 916, 924 (Tex. 1993) (citing *Hofer v. Lavendar*, 679 S.W. 2d 470, 476 (Tex. 1984), "...exemplary damages survive the estate, whoever the beneficiaries of the estate may be.")