**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| JANIS L. BROWN, Individually and as | § | |
| Personal Representative of the Estate of | § | |
| JASON RAY BROWN, Deceased, and | § | |
| BILLY RAY BROWN, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| WICHITA COUNTY, TEXAS, THOMAS | § | 7:05-CV-0108-O-KA |
| J. CALLAHAN, Sheriff of Wichita County, | § | |
| Texas, in his Individual and Official | § | **ECF** |
| Capacity, DANIEL H. BOLIN, M.D., in | § | |
| his Individual and Official Capacity, | § | |
| KAYE KRAJCA, in her Individual and | § | |
| Official Capacity, MICHELLE GEORGE, | § | |
| in her Individual and Official Capacity, | § | |
| ROSE INGRAM, in her Individual and | § | |
| Official Capacity, DICKEY LEE SOURS, | § | |
| JR., in his Individual and Official | § | |
| Capacity, BLAINE GREENE, in his | § | |
| Individual and Official Capacity, WILLIAM | § | |
| YEAGER, in his Individual and Official | § | |
| Capacity, GARY WHATLEY, in his | § | |
| Individual and Official Capacity, JAMES | § | |
| GEARY, in his Individual and Official | § | |
| Capacity, WESLEY DICKERMAN, in | § | |
| his Individual and Official Capacity, and | § | |
| WAYNE PARISH, in his Individual | § | |
| and Official Capacity, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

The Court finds it necessary to *sua sponte* reconsider part of its ruling on Plaintiffs'

Motion for Reconsideration, as well as its ruling on Dr. Daniel Bolin's Motion for Summary

Judgment.  *See* Doc. # 159, 136.  Specifically, the Court finds it necessary to reconsider and

modify the portion of its decision declining to reconsider Plaintiffs' "episodic act or omission"

1

claims in light of the new evidence presented by Plaintiffs (Doc. # 159), and, upon

reconsideration, to modify its ruling (Doc. # 136) on Dr. Bolin's motion for summary judgment

as noted below:

I.       Background

         Plaintiffs are the relatives and personal representative of the Estate of Jason Brown

("Brown").  Doc. # 1 (Compl.).  Plaintiffs bring claims against Wichita County, jail physician

Dr. Bolin, Wichita County Sheriff Thomas Callahan, jail nurses, and jail detention officers

arising out of Brown's death at a Wichita County jail facility.  Doc. # 86 (Amd. Compl.).

         Jason Brown was arrested on Thursday, July 22, 2004, by the Burkburnett Police

Department for narcotics-related charges.  At that time, Dr. Bolin served as the contracting

physician at the Wichita County jail, and Michelle George, Rose Ingram, and Kaye Krajca

served as jail nurses.  During book-in, Brown notified jail employees that he had medical

conditions, including auto immune chronic hepatitis, esophageal varices, jaundice,

splenomegaly, and anemia.

         A few hours later, Brown complained to jail detention officers that he did not feel well

and was regurgitating blood.  The detention officers notified Nurse George, who attempted to

contact Brown's treating physician but was unsuccessful.  She also contacted his pharmacy and

was informed that his prescriptions had not been filled since January 2004.  Nurse George

checked Brown's vital signs and noted in her nurse report that Brown was in no immediate

distress except for complaints of nausea.

         The following night, Friday, July 23, 2004, Brown's fellow inmates notified detention

officers Dickey Lee Sours and Blain Green via the emergency call button that Brown was again

regurgitating blood.  Officer Sours reported that he observed a large puddle of blood near

Brown, and Brown informed the officers of his complicated medical history.  This incident was

reported to Nurse Krajca, who prescribed a liquid antacid.

Between the hours of 12:00 a.m. and 2:00 a.m., inmates again called officers Sours and

Greene notifying them that Brown was in severe pain and requesting help.  The officers in turn

notified Nurse Krajca.  Nurse Krajca directed the detention officers to administer a phenerghan

suppository for nausea.  The officers were unable to do so because Brown was incoherent.

Nurse Krajca was notified, and when she arrived, Brown was taken to medical solitary where she

administered the medication.  There is some dispute between the officers and Nurse Krajca as to

whether Brown was responsive and alert at this time.

On Saturday, July 24, 2004, between 3:12 a.m. and 11:30 p.m., detention officers

allegedly monitored Brown through a slot in the cell door.  At approximately 11:30 p.m., Brown

was found unresponsive and pulseless by the two officers.  Nurse Krajca advised the officers to

call emergency services.  The medical response team reported that Brown had expired quite

some time prior to arrival.  Dr. Bolin was neither present during nor notified at any time during

Brown's incarceration.

Plaintiffs filed suit against, among others, jail nurses George and Krajca, Sheriff Thomas

Callahan, Wichita County, and Dr. Bolin.  Plaintiffs allege that Dr. Bolin failed to supervise and

instruct the jail nursing staff, and that Dr. Bolin created barriers to supervision and proper

medical treatment.

On August 2, 2007, Dr. Bolin filed a Motion for Summary Judgment on all of Plaintiffs'

claims brought pursuant to 42 U.S.C. § 1983.[1]  On April 9, 2008, the Court entered a

Memorandum Opinion and Order granting this motion.  Doc. # 136.  The Court considered the

following evidence: (1) Dr. Bolin's standing orders which allowed the jail nurse staff to assess

patients and prescribe and administer medications without supervision; (2) Dr. Bolin's admission

that he rarely conducted staff meetings; (3) Dr. Bolin's admission that he would get irritated

from receiving certain calls at late hours from nursing staff; (4) Wichita County Sheriff Thomas

Callahan's testimony that nurses complained about Dr. Bolin's "grumpiness;" and (5) Nurse

Krajca's statement that she would receive a reprimand from Dr. Bolin if she called him

concerning Brown's condition.  *Id.*  The Court found that this evidence failed to support an

inference of deliberate indifference on the part of Dr. Bolin.  *Id.*

On April 9, 2008, Plaintiffs filed a motion to reconsider, and on April 14, 2008, Plaintiffs

filed an amended motion to reconsider, asking the Court to consider additional evidence and

argument inadvertently left out by Plaintiffs.  Doc. # 138-41; Doc. # 144-45.  Specifically,

Plaintiffs asked the Court to consider: (1) affidavit testimony of two former Wichita County jail

nurses, Dawn Marie Wilkinson and Pathena Dawn Tweed, dated November 21, 2007 and

November 26, 2007, respectively, regarding Dr. Bolin's intimidation and harassment of jail

nurses; and (2) affidavit testimony and supplemental expert reports from Lawrence H. Mendal

and Jacqueline Moore, dated November 21, 2007, including information and conclusions

regarding the death of Wilbert Henson at the Wichita County jail four months after the death of

---

[1]  Plaintiffs also bring several claims under state law against Dr. Bolin.  While Dr. Bolin's motion
states that he moves for summary judgment dismissing the "Plaintiff's (sic) claims against him" and that
there is "no evidence that Dr. Bolin violated any of Baker's (sic) rights under 42 U.S.C. § 1983 and/or
Texas law," Dr. Bolin does not specifically address summary judgment with respect to Plaintiffs' state
law claims.  *See* Doc. # 78-80.  Accordingly, the Court declines to address summary judgment as to any
claims Plaintiffs bring pursuant to state law.

4

Jason Brown.  Plaintiffs argued that this evidence demonstrated that Dr. Bolin engaged in a pattern or practice of harassment of nurses which destroyed meaningful healthcare at the Wichita County jail.  Plaintiffs also urged the Court to consider their newly-asserted argument that this case should be viewed as a "conditions of confinement" case rather than an "episodic act or omission" case.  Doc. # 144.

On August 5, 2009, the Court entered a Memorandum Opinion and Order denying Plaintiffs' Motion for Reconsideration.  Doc. # 159.  The Court stated that it would not consider prior arguments made by Plaintiffs, and then determined that Plaintiffs' new evidence did not support a conditions of confinement theory.  *Id.*  Finding no evidence meriting a reversal of the Court's prior ruling, the Court denied Plaintiffs' motion for reconsideration.

While the Court properly considered the additional evidence submitted by Plaintiffs in connection with Plaintiffs' newly asserted "conditions of confinement" claim and rejected this argument, the Court finds it necessary to reconsider its ruling declining to consider this evidence in support of Plaintiffs' previously-asserted "episodic act or omission" claim.  *See* Doc. # 136.  The Court now considers Plaintiffs' "episodic act or omission" claim in light of Plaintiffs' additional evidence.

II.    Legal Standard

The Court *sua sponte* reconsiders its order denying Plaintiffs' motion to reconsider and its order granting Dr. Bolin's motion for summary judgment.  These orders are interlocutory orders which may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities.  *See* FED. R. CIV. P. 54(b).  Accordingly, the Court now determines whether Plaintiffs' additional evidence, when considered with the record as a whole,

present a fact issue with respect to Plaintiffs' "epsiodic act or omission" claim.  *See* FED. R. CIV.

P. 56.

III.    Analysis

Plaintiffs ask the Court to consider: (1) affidavit testimony of two Wichita County jail nurses, Dawn Marie Wilkinson and Pathena Dawn Tweed; and (2) affidavit testimony and supplemental expert reports from Lawrence H. Mendal and Jacqueline Moore.  Dr. Bolin has moved to strike this evidence.

**A.      Motion to Strike - Affidavits from Jail Nurses**

Plaintiffs submit affidavits from jail nurses Pathena Dawn Tweed and Dawn Marie Wilkinson.  Both nurses averred that they have personally observed Dr. Bolin berate jail nurses who called him for medical instruction or direction, and that Dr. Bolin's demeanor intimidated the nurses working under him.  *Id.*  Both nurses further averred that they personally feared calling Bolin for fear of unwarranted criticism.

Ms. Tweed and Ms. Wilkinson further averred that they and other members of the nursing staff perceived that Dr. Bolin did not want inmates being sent to the emergency room because it would be Dr. Bolin's responsibility to then go to the hospital to provide care for the inmate.  *Id.* Wilkinson stated that she personally experienced this when a female inmate complained of abdominal pains, and reported that she had been raped prior to being arrested and detained.  Wilkinson stated that she inspected the inmate, and discovered that the inmate had a tampon lodged deep into her body that neither she nor the inmate could remove.  Wilkinson further averred that she recognized the situation required immediate medical attention, so she called Dr. Bolin for medical instruction, but was advised not to send the inmate to the emergency

room and to remove the tampon herself.  Wilkinson stated that she disobeyed Dr. Bolin's instruction, calling an ambulance and driving her own vehicle to the hospital to be with the inmate.

Ms. Tweed averred to a similar situation involving an inmate with very low blood sugar. Tweed stated that she called Dr. Bolin for instruction regarding the inmate and that Dr. Bolin informed her not to send the inmate to the emergency room "under any circumstances," advising Ms. Tweed to take whatever action she believed necessary to bring the inmates blood sugar levels up.  Tweed stated that after several failed attempts to raise the inmate's blood sugar level, she had the inmate transported to the hospital for emergency treatment.  Tweed stated that, upon learning of her decision to send the inmate to the emergency room, Dr. Bolin became very irate, yelled at Ms. Tweed, and questioned why she had defied his orders.

Plaintiffs argue that this evidence demonstrates that Dr. Bolin engaged in a pattern or practice of harassment of nurses which destroyed meaningful healthcare at the Wichita County jail.  Defendant responds that the Court should strike these affidavits because they contain improper hearsay and speculation.

The Court finds that, while the affidavits submitted by Plaintiffs contain a few statements properly characterized as hearsay and speculation, the Court may consider those non-hearsay statements within the affidavits that are based on the affiants' personal knowledge.  Accordingly, the Court declines to strike these affidavits in whole, but will not consider hearsay or speculation.

**B.    Motion to Strike - Supplemental Expert Reports**

Plaintiffs also submit the supplemental expert reports of Lawrence Mendel and

Jacqueline Moore regarding the death of Wilbert Henson at the Wichita County jail approximately four months after the death of inmate Brown.  Dr. Mendel offers his opinion that, among other things, the treatment of Wilbert Henson has many parallels to that of Jason Brown, including that both entered custody with substantial medical problems, but were not seen by the jail physician; that both individuals failed to receive one or more of their essential medications; and that when these inmates' conditions deteriorated, they were not sent to the hospital.  Ms. Moore offers her opinion that, among other things, Nurse Krajca and other jail nurses allowed Mr. Henson to languish in his cell when urgent medical care was needed.  Plaintiffs argue this evidence demonstrates a dangerous pattern arising out of the policies created by Dr. Bolin.

Defendant Bolin argues that these reports may not be considered because Plaintiffs have failed to designate Dr. Mendel and Nurse Moore as experts in this matter, and also because they have not reviewed any evidence in this case.  Plaintiffs reply that they served and filed expert designations on July 27, 2007.

A review of the docket demonstrates that Plaintiffs designated both Larry Mendel and Jacqueline Moore as retained experts in this case.  Doc. # 77.  In addition, Dr. Bolin has failed to cite any authority or evidence, and the Court has found none, demonstrating that these experts' opinions should be excluded because they concern the death of Wilbert Henson, rather than inmate Brown's death.  The Court notes that it is often necessary in cases brought pursuant to 42 U.S.C. § 1983 to present evidence concerning events other that the one plaintiff specifically complains of in order to show a pattern or custom.  *See Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002) (defining an official policy as including a persistent, widespread practice . . .).

8

Accordingly, the Court will consider these reports as evidence in support of Plaintiffs' claims.

**C.      Qualified Immunity**

In order to overcome the defense of qualified immunity, Plaintiffs must prove Dr. Bolin violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995).  If reasonable public officials could differ as to whether Bolin's actions were lawful, Bolin is entitled to immunity. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).  In addition, the Court must also consider whether Plaintiffs have raised an issue of fact regarding whether the defense of qualified immunity is unavailable because the defendant is plainly incompetent or knowingly violated the law.  *See Malley*, 475 U.S. at 341 (1986).

The Court finds that Plaintiffs' evidence, including Wichita County Sheriff Thomas Callahan's testimony that nurses complained about Dr. Bolin's "grumpiness," Nurse Krajca's statement that she would have received a reprimand from Dr. Bolin if she sent Brown to the hospital, and the non-hearsay and non-speculative portions of the affidavits of Pathene Dawn Tweed and Dawn Wilkinson, raise genuine issues of material fact regarding whether Defendant Bolin is entitled to qualified immunity.  The Court finds that Plaintiffs' evidence raises genuine issues of material fact regarding whether Dr. Bolin implemented, adopted, or maintained a custom or policy of nurse intimidation and discouraged nurses from seeking emergency care for

9

inmates with serious medical needs.  In addition, there is evidence suggesting that the alleged

policy or custom is of the character that the policy itself is a repudiation of constitutional rights

and is the moving force of the constitutional violations complained of here.  *See Cozzo*, 279 F.3d

at 289.  The Court notes Plaintiffs have produced evidence suggesting that Nurse Krajca violated

Plaintiffs' constitutional rights by denying Brown adequate medical treatment.  *See* Doc. # 153,

Memorandum Opinion and Order resolving Krajca's motion for summary judgment, entered

May 20, 2008.  The Court has found that disputed evidence suggests that Nurse Krajca was

aware that Brown had serious medical conditions including hepatitis A, B, and C, esophageal

varices, jaundice, spleenial magaly, and anemia; that Brown regurgitated blood and was

complaining of gastric ulcers; and that Brown was incoherent and unresponsive; but that in spite

of this knowledge, Krajca merely treated Brown for nausea and placed Brown in an isolated cell

rather than securing emergency medical services.  *Id.*  Plaintiffs have also produced evidence

suggesting that Nurse Krajca believed she would have received an reprimand from Dr. Bolin for

sending Brown to the hospital.  Jt. App. at 162.  The Court finds this evidence raises a genuine

issue of fact regarding whether Nurse Krajca realized that Brown was in need of medical

attention, but failed to provide such attention because of Dr. Bolin's policy or custom of

discouraging nurses from seeking emergency care for inmates with serious medical needs.

Further, the Court finds that genuine issues of material fact exist regarding whether Dr.

Bolin acted in an objectively reasonable manner in view of the clearly established law at the time

of the conduct in question, in light of the facts available to him, precluding the Court from

granting summary judgment on the grounds of qualified immunity.  Plaintiffs have produced

evidence raising genuine issues of material fact regarding whether Dr. Bolin intimidated nurses

10

and discouraged nurses from seeking emergency care for inmates with serious medical needs.  In addition, to the extent there was such a policy or custom, it is obvious that such a  policy would result in inmates with serious medical needs not receiving medical attention and that harm would likely result.  *See Hope v. Palzer*, 536 U.S. 730 (2002) (deliberate indifference can be inferred from the fact that the risk of harm is obvious).  The rights of a pretrial detainee not to have his serious medical needs met with deliberate indifference was established at the time of the events in question, demonstrating that there are fact issues regarding whether Dr. Bolin acted in an objectively reasonable manner in view of the clearly established law and facts available to him at the time in question.  *See Hare v. City of Cornith, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996).

 Accordingly, the Court finds that, with respect to Plaintiffs' "episodic act or omission" claims, Plaintiffs have raised a fact issue as to whether Dr. Bolin was objectively reasonable in view of the facts known to him and in light of clearly established law at the time in question.  In light of the evidence before the Court, and the applicable law, the Court finds that Dr. Bolin is not entitled to summary judgment on his defense of qualified immunity.

IV.  Conclusion

The Court hereby reconsiders and amends its order (Doc. # 159) denying reconsideration, and upon reconsideration amends its order granting Dr. Bolin's Motion for Summary Judgment (Doc. # 136).  The Court finds that fact issues exist precluding summary judgment with respect to Plaintiffs' "episodic act or omission" claim for violation of the Fourteenth Amendment, brought pursuant to 42 U.S.C. § 1983, demonstrating that Dr. Bolin's motion for summary judgment should be and is hereby **GRANTED in part,** and **DENIED in part.**

**SO ORDERED** on this **4**th day of **August, 2009**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**