IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JANIS L. BROWN, et al, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:05-CV-108-O |
| | § | |
| WICHITA COUNTY, TEXAS, et al, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are: Defendant Wichita County's Motion to Reconsider (ECF No. 201), Plaintiff Janis L. Brown's Response (ECF No. 203), Defendant Wichita County's Reply (ECF No. 207), Plaintiffs' Motion to for Leave to File Additional Evidence in Response to Wichita County's Motion for Summary Judgment (ECF No. 217), and Defendant Wichita County's Response and Objection to Plaintiffs' Motion for Leave to File Additional Evidence (ECF No. 219).

Having reviewed the foregoing, and the applicable law, the Court finds that Defendant Wichita County's Motion for Reconsideration should be and is hereby **GRANTED.**

### I.     Factual Background

Plaintiffs are the relatives and personal representatives of the Estate of Jason Brown ("Brown"). Am. Compl. 1, ECF No. 1. Brown died while being detained in the Wichita County Jail. Plaintiffs asserted claims against Wichita County, Sheriff Thomas Callahan ("Sheriff Callahan"), jail physician Dr. Daniel H. Bolin, M.D. ("Dr. Bolin"), jail nurses, and jail detention officers based on Brown's death. Am. Compl., ECF No. 86.

Jason Brown was arrested on Thursday, July 22, 2004. Jt. App. to Mot. for Summ. J. 203,

-1-

ECF No. 129. On the way to the jail, Brown began crying and pleaded with the arresting officer to release him because he had medical problems and did not have long to live. *Id.* at 208. The arresting officer advised the jail staff upon arrival at the jail of Brown's medical problems. *Id.* After intake procedures were completed, Brown was put in the general inmate population. *Id.*

Around 11:42 p.m. on July 23, 2004, someone in the general population tank pushed the emergency button and notified the control room that an inmate had thrown up blood. *Id.* at 94. Detention officers Dickey Lee Sours, Jr. and Blaine Greene responded to the call. *Id.* at 207-08. Detention officer Sours reported that he found Brown laying on his side next to a puddle of blood 1 to 1.5 feet in width and 2 to 2.5 feet in length, with chunks of food in the puddle. *Id.* at 162. Detention officer Greene reported that the officers saw a big puddle of blood. *Id.* at 170. Nurse Krajca was called and told the situation, and over the phone, Krajca asked the detention officers to give Brown some liquid antacids. *Id.* at 162.

Later, Brown complained that he was in pain and begged for help. *Id.* When Krajca was again called, she asked "did anyone actually see him (Brown) throw up the blood?" *Id.* Sours responded, "Kaye (Krajca), I had to clean it up." *Id.* Krajca advised that Brown should be given suppositories, but Brown would not take them. *Id.* Krajca was again called and told that Brown was not coherent. *Id.* Krajca then went to the jail to visit Brown. *Id.*

There is a dispute in the evidence regarding what happened next. There is evidence suggesting that Brown told Krajca he had nausea and vomiting, and also informed her that he had several medical problems including auto immune chronic hepatitis A, B, and C, esophageal varies, jaundice, spleenial magaly, and anemia. *Id.* at 184, 205. However, there is also evidence indicating that Nurse Krajca could not get Brown to respond. *Id.* at 162.

There is no dispute that Krajca then had Brown moved to medical solitary, and gave Brown suppositories. *Id.* at 162, 183, 205. Later, during a cigarette break, Krajca asked Sours "[d]o you know what kind of ass chewing I would get from Dr. Bolin if I sent him (Brown) to the hospital in the good health that he is in?" *Id.* at 162, 208.

On Saturday, July 24, 2004, between 3:12 a.m. and 11:30 p.m., detention officers allegedly monitored Brown through a slot in the cell door. At approximately 11:30 p.m., Brown was found unresponsive and pulseless by the two officers. *Id.* at 183, 184, 190, 203. Nurse Krajca advised the officers to call emergency services. *Id.* at 183. The medical response team reported that Brown had expired quite some time prior to arrival. *Id.* at 201. The autopsy report indicates that Brown died from a massive gastrointestinal hemorrhage at the age of 26. *Id.* at 222.

## II. Procedural Background

Plaintiffs filed suit on June 8, 2005 alleging claims against jail nurses, detention officers, the jail physician, Wichita County, and Wichita County Sheriff Thomas Callahan. Compl., ECF No. 1. Plaintiffs alleged that the County, through the acts and/or omissions of Defendants Callahan and Bolin, among others, violated Brown's rights under the Fourteenth Amendment by adopting and/or condoning unconstitutional policies and failing to train and supervise jail staff, causing Brown's death. Am. Compl., ECF No. 86.

On February 29, 2009, Defendant Wichita County filed its motion for summary judgment as to Plaintiffs' municipal liability claims brought under 42 U.S.C. § 1983. Def. Wichita Cnty. Mot. for Summ. J., ECF No. 126. On August 4, 2009, this Court issued its Memorandum Opinion and Order granting in part and denying in part Defendant Wichita County's motion for summary judgment. Mem. Op. & Order, ECF No. 176. By separate order, the Court granted in part and

denied in part Sheriff Callahan's motion for summary judgment. Mem. Op. & Order, ECF No. 173.

Sheriff Callahan appealed this Court's denial of his motion for summary judgment on the issue of qualified immunity to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit issued an Opinion on December 6, 2010 reversing this Court's denial of Sheriff Callahan's motion based on qualified immunity. *See Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010); ECF No. 198.

Defendant Wichita County filed a Motion for Reconsideration (ECF No. 201) requesting that this Court reverse its order denying Wichita County's motion for summary judgment on Plaintiffs' wrongful death and survival claims brought under 42 U.S.C. § 1983 based on the opinion of the Fifth Circuit in *Brown v. Callahan*. The parties submitted briefs and the Court held a hearing on March 30, 2011 regarding the County's motion to reconsider.

**III. Legal Standards**

A. Motion to Reconsider

Defendant Wichita County moves for reconsideration under Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that an order that adjudicates fewer than all the claims among the parties "may be revised at any time" before the entry of a final judgment. Fed. R. Civ. P. 54(b). Thus, Rule 54(b) governs requests that the court reconsider an interlocutory order. *See id.* "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court." *Dos Santos v. Bell Helicopter Textron, Inc. District,* 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (Means, J.). The district court's discretion in this respect is broad. *Calpecto 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993). Such a motion requires the court to determine "whether reconsideration is necessary under

the relevant circumstances." *Judicial Watch v. Dep't of the Army*, 446 F. Supp. 2d 112, 123 (D.D.C. 2006) (citation and internal quotation marks omitted). Even though the standard for evaluating a motion to reconsider under Rule 54(b) "would appear to be less exacting than that imposed by Rules 59 and 60 . . ., considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Dos Santos*, 651 F. Supp. 2d at 553. However, "[b]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n. 14 (5th Cir. 1994) (en banc) (analyzing a Rule 59(e) motion for reconsideration of an order granting a motion for summary judgment).

    B.    <u>Motion for Summary Judgment</u>[1]

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine

---

[1] Effective December 1, 2010, Rule 56 of the Federal Rules of Civil Procedure was amended in order "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts." Fed. R. Civ. P. 56 advisory committees' note. However, because the instant motion was filed well before the new rule was put into effect, the Court uses the language of the prior rule. As the Committee Note to the new Rule 56 states, "[t]he standard for granting summary judgment remains unchanged." *Id.*

material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show. . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little ,*37 F.3d at 1075; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Summary judgment in favor of the defendant is proper if, after adequate time for discovery, the plaintiff fails to establish the existence of an element essential to his case and to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the Court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The Court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

**IV.     Plaintiffs' Motion for Leave to File Additional Evidence**

Plaintiffs request leave to file the Affidavit and Expert Report of Lawrence H. Mendel, D.O., FSCP, CCHP and Affidavit and Expert Report of Jacqueline Moore, R.N., Ph.D., CCHP-A in support of their response to Wichita County's Motion for Summary Judgment. *See* Pls.' Mot. Leave File Add'l Evidence 3, ECF No. 217. Dr. Mendel and Nurse Moore's affidavits were prepared in connection with the review of records pertaining to Chelsea Bowden and her incarceration in the Wichita County Jail from April 20, 2007 to May 30, 2007. Lawrence H. Mendel Aff. 2, ECF No. 217-1; Jacqueline Moore Aff. 2, ECF No. 217-2. Plaintiffs assert that Dr. Mendel and Nurse Moore's affidavits and attached reports are relevant in proving Dr. Bolin and Wichita County: (i) had a policy of making the Jail's "unlicensed" staff practice medicine in violation of Texas law; (ii) failed to properly supervise and train the "unlicensed" staff; and (iii) generally had a callous disregard for the health and safety of Wichita County pretrial detainees. Pls.' Mot. Leave File Add'l Evidence 6, ECF No. 217.

Wichita County objects to Plaintiffs' motion for leave to file additional evidence on the basis that it does not cite any authority which would allow them to file the instant motion, and that it impermissibly attempts to reopen the record and evidence on Wichita County's Motion for Summary Judgment through its response to Wichita County's Motion for Reconsideration. *Id.* at 3. Wichita County also objects to the new evidence under Federal Rules of Evidence 404(b), 402, 403, and 408(a). *Id.* at 3-5. Finally, Wichita County objects to the affidavits "because they were drafted and submitted as evidence in support of allegations which were ultimately settled without a determination of the underlying issues therein." *Id.* at 5-6.

Though the Court tends to agree with Wichita County regarding the questionable

admissibility of the affidavits and expert reports of Dr. Mendel and Nurse Moore, the Court will grant Plaintiffs' Motion for Leave to File Additional Evidence. Therefore, the additional evidence submitted by Plaintiffs will be considered by the Court in ruling on the County's Motion to Reconsider.

## V.     Defendant's Motion to Reconsider

Defendant Wichita County moves for reconsideration of this Court's Order denying its Motion for Summary Judgment. Wichita County bases its request for reconsideration on the Fifth Circuits' order dismissing Sheriff Callahan based on qualified immunity. Wichita County argues that since Sheriff Callahan is not individually liable for the injuries and death of Jason Brown, then as the final policymaker of Wichita County, Wichita County cannot be held liable either. Plaintiffs argue that Sheriff Callahan is not the only policymaker for Wichita County, and that Dr. Bolin also serves as a policymaker for the Jail based on his contract with the County to supervise the jail's medical staff.

Plaintiff filed the instant suit under 42 U.S.C. § 1983, alleging that Defendants violated Brown's constitutional rights under the Fourteenth Amendment. Under § 1983, a governmental entity, such as Wichita County, can only be held liable if there is either an unconstitutional action by official policymakers or a policy or custom that caused the deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). It is well-established that a county is not liable under § 1983 on the theory of respondeat superior. *Monell*, 436 U.S. at 694. A municipality is liable only for acts directly attributable to it "through some official action or imprimatur." *Piotrowski*, 237 F.3d at 578.

Municipal liability on a claim brought under section 1983 requires proof of three elements: 1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

First, Plaintiffs must point to an official policymaker for Wichita County. "[A]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam); *see also Piotrowski*, 237 F.3d at 549. The official complained of must possess:

> [f]inal authority to establish [county] policy with respect to the action ordered . . . The official must also be responsible for establishing final governmental policy respecting such activity before the [county] can be held liable . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986). An employee, agency, or board of a governmental entity is not a policymaker unless the governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee, agency, or board and cannot review the action or decision of the employee, agency, or board. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989). When the challenge relates to a custom of behavior among non-policymaking employees, which may be contrary to official policy, the plaintiff cannot rely on a single instance of unconstitutional conduct, but must demonstrate "at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).

Second, Plaintiffs must show an official policy that inflicted the deprivation of Brown's

rights. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Official policy is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [county] lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or
>
> 2. A persistent, widespread practice of [county] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [county] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [county] or to an official to whom that body had delegated policy-making authority.

*Id* "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Brown v. Bryan Cnty.,* 219 F.3d 450, 462 (5th Cir. 2000), *reh'g and reh'g en banc denied*, 235 F.3d 450 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001). However, this "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008 ) (per curiam) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)), *cert. denied*, 129 S.Ct. 1669, 173 L.Ed.2d 1036 (2009).

Third, Plaintiffs must show a violation of constitutional rights whose "moving force" is the policy or custom. That is, "there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. Thus, Plaintiffs must "establish both the causal link ('moving force') and the [governmental entity's] degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder*, 142 F.3d at 796 (warning that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.").

In this case, the Court previously denied the County's motion for summary judgment, finding

that Plaintiffs raised "genuine issues of material fact regarding whether Defendant Callahan, sheriff of Wichita County, can be held personally liable for failing to supervise the jail medical staff, as well as for adopting, maintaining, or acquiescing to a custom that was the moving force behind the constitutional harms at issue here." Am. Mem. Op. & Order 7, ECF No. 176. The Court further found that this evidence raised issues regarding liability on behalf of Wichita County because "Defendant Callahan is the final policymaker with respect to the Wichita County jails. . . ." *Id.* Therefore, the Court held that "the fate of the County hinges on resolution of Plaintiffs' failure to supervise and policy/custom claims against Defendant Callahan". *Id.*

Wichita County now requests reconsideration of this Court's Order based on the Fifth Circuits' opinion dismissing Sheriff Callahan based on qualified immunity. Plaintiffs first allege that Dr. Bolin, in addition to Sheriff Callahan, also serves as a policymaker for the jail. Policy may be made by city lawmakers "or by those whose edicts or acts may fairly be said to represent official policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768-69 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). The policy of an individual official cannot give rise to governmental liability unless the official was one to whom the governing body had delegated final policymaking authority, not mere discretion or decision-making authority. *Pembaur*, 475 U.S. at 483; *Bennett*, 728 F.2d at 769 (finding that liability of the city must rest on official policy, meaning the city government's policy and not the policy of an individual official. "The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority."). City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. *Bennett*, 728 F.2d at 769. Policymakers act in the place of the governing body in the area of their responsibility; they are not supervised except as to the totality of their

performance. *Id.* Where the direct action of the policymaker, rather than the conduct of subordinates, is involved, the municipality has itself acted. *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 755 (5th Cir. 1993). Whether a particular official has "final policymaking authority" is a question of state and local law. *Praprotnik*, 485 U.S. at 123; *see Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1244 (5th Cir. 1994).

It is not always easy to determine whether a municipal official has policymaking authority or discretionary authority to enforce policy. *See Williams v. Butler*, 863 F.2d 1398, 1403 (8th Cir. 1988) (en banc) ("a very fine line exists between delegating final policymaking authority to an official . . . and entrusting discretionary authority to that official"). In *Bennett*, the Fifth Circuit addressed whether the city attorney and building inspector were given policymaking authority. 728 F.2d at 769. In doing so, the court found that neither city employees had any policymaking authority. *Id.* The city attorney was employed only to give legal advice and the building inspector's job was to execute or administer the city policy, established by the city council in its building code. *Id.* The building inspector obtained his authority from the chief administrative officer of the city. His decisions were perhaps discretionary and ministerial, but he had no authority to act in lieu of the council to set or modify city policy. *Id.* at 770. However, in *Mattix v. Hightower*, No. 3-96-cv-15-R, 1998 WL 246671, at *13 (N.D. Tex. May 3, 1998), the district court held that a city manager was a final policymaker for purposes of § 1983 municipal liability because she governed conduct relating to city employment, could act in lieu of the city council in employment matters, decided the employment goals for the city, and devised means of achieving those goals, such as creating disciplinary procedures to maintain an efficient work force. *Id.*

In this case, Plaintiffs assert that Dr. Bolin, in addition to Sheriff Callahan, serves as a

-12-

policymaker for the jail in regard to the operation and supervision of the medical staff. Plaintiffs argue that Dr. Bolin was contractually responsible for supervising and training the jail's nursing staff. Pls.' Resp. to Def. Mot. for Recons. 3, ECF No. 203. However, "[i]t has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected". *Turner v. Upton Cnty.,* 915 F.2d 133, 136 (5th Cir. 1990). In addition, Texas Local Government Code § 351.041(a) provides that "[t]he sheriff of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by lawful authority, subject to an order of the proper court." The Code further provides that "[t]he sheriff may appoint a jailer to operate the jail and meet the needs of the prisoners, but the sheriff shall continue to exercise supervision and control over the jail." Tex. Local Gov't Code Ann. § 351.041(b). As the court noted in *Bennett*, "[t]he governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board." 728 F.2d at 769.

Plaintiffs assert that Sheriff Callahan, on numerous occasions, denied responsibility for supervising the jail nursing staff. *See* Pls.' Resp. 3, ECF No. 203. However, even though Dr. Bolin may have made discretionary and ministerial decisions regarding medical care for the jail, including supervision of the jail nursing staff, the Court does not find that those decisions rise to the level of policymaking authority. *See Bennett,* 728 F.2d at 768 (holding that the delegation of policymaking authority requires more than a showing of mere discretion or decision making authority on the part of the delegee); *see also Pembaur*, 475 U.S. at 481-82 (holding that the mere fact that a municipal

official has discretionary authority is not a sufficient basis for imposing municipal liability.). The Court finds that Dr. Bolin's discretionary authority is more like that of the city attorney or building inspector in *Bennett*, rather than the city manager in *Mattix*. There is no evidence in the record showing that the governing body expressly or impliedly delegated policymaking authority to Dr. Bolin. Similarly, the Court finds insufficient evidence that Sheriff Callahan expressly or impliedly delegated his policymaking authority to Dr. Bolin, or even had the authority to do so.

In further support of the County, the Fifth Circuit held that, "[t]he facts relevant to the Browns' theories, developed in discovery, demonstrate that the Sheriff is legally responsible for operating the county jail." *Brown,* 623 F.3d at 254 (citing to Tex. Local Gov't Code Ann. § 351.041(a)). Though the County executed a contract with Dr. Bolin explicitly requiring the doctor to supervise the professional work of the jail's medical staff – six Licensed Vocational Nurses (LVNs) – the Sheriff supervised their employment. *See Brown*, 623 F.3d at 254. This does not lead to the conclusion that Dr. Bolin was expressly or impliedly delegated policymaking authority by the County to be considered a final policymaker. Therefore, the Court finds that Dr. Bolin is not a policymaker with respect to the operation and supervision of the jail's medical staff.

Even if Dr. Bolin were considered a final policymaker, the Court finds insufficient evidence of a policy or custom that was the moving force behind Brown's constitutional deprivation. An official policy may be either an official policy statement or a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), modifying 728 F.2d 762 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016 (1984); *see Eugene v. Alief Indep. Sch. Dist.*, 65

F.3d 1299, 1304 (5th Cir. 1984). The "official policy" element can only be satisfied where a plaintiff proves that a municipal policy of some nature caused a constitutional tort. *Id.* A plaintiff may demonstrate municipal liability based on: (1) a formally adopted municipal policy; (2) an informal custom or practice; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority. *Monell*, 436 U.S. at 694 (establishing that § 1983 municipal liability may be based on an officially adopted and promulgated policy); *Johnson v. Moore, III,* 958 F.2d 92, 94 (5th Cir. 1992) (noting that municipal liability may be founded on a persistent or widespread practice of which actual or constructive knowledge is attributable to the policymaking authority); *City of Canton*, 489 U.S. at 385-87 (providing that inadequacy of training may serve as a basis for municipal liability where the failure to train amounts to deliberate indifference to the rights of persons); *Pembaur,* 475 U.S. at 480-81 (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability).

Plaintiffs assert that Wichita County: (1) condoned or ratified a "policy" of nurse intimidation carried out by Dr. Bolin, and (2) that Dr. Bolin implemented an unlawful prescription drug standing order. *See* Pls.' Resp. to Def. Mot. Recons. 5-6, ECF No. 203. This Court previously held that a material fact issue existed as to whether Sheriff Callahan condoned or ratified a "policy" of nurse intimidation carried out by Dr. Bolin that discouraged nurses from seeking emergency care for inmates with serious medical needs. *See* Memo. Op. & Order denying Sheriff Callahan's Mot. Summ. J. 23, ECF No. 173. The Fifth Circuit addressed whether such a policy of nurse intimidation was condoned or ratified and carried out by Dr. Bolin and ruled that:

> It is unlikely such a policy can be legitimately inferred from the scant evidence above without disserving the principle that a 'policy' must be 'persistent,'

> 'widespread,' 'common' and 'well-settled.' *See Cozza,* 279 F.3d at 289. Dr. Bolin's 'policy' may have been to mistreat the staff, but whether the policy's effect was to discourage inmates from receiving adequate medical care is barely substantiated.

*Brown*, 623 F.3d at 256. The Fifth Circuit also held that "a jury would be asked to infer from Dr. Bolin's unpleasant attitude not only that nurses would be unhappy but that they would be so intimidated as not to respond to the inmates' serious medical needs." *Id.* However, the evidence shows that jail nurses would send an inmate to the emergency room in spite of Dr. Bolin's orders to the contrary. *Id.* ("That two nurses decided to send inmates to the ER over Dr. Bolin's objections proves the opposite of intimidation."). Thus, the Fifth Circuit held that Plaintiffs "fail[ed] to establish a factual connection between Defendant's demeanor and any actual adverse consequences to the nursing staff or any prior instance in which the quality of the inmates' medical care was diminished because of Defendant's communication problems with them." *Id.* Therefore, the Court finds that there is no genuine issue of material fact regarding whether Dr. Bolin maintained a policy of nurse intimidation that discouraged nurses from seeking emergency care for inmates with serious medical needs.

Plaintiffs also assert that Dr. Bolin implemented an unlawful prescription drug standing order that required vocational nurses to practice medicine, exceeding the limits of the Texas Nurse Practices Act. Pls.' Resp. Def. Mot. Recons. 5-6, ECF No. 203. Plaintiffs allege that Nurse Krajca's administration of a Phenergan suppository to Brown pursuant to Dr. Bolin's standing order was a violation of Texas law for prescribing medications. Plaintiffs argue that Wichita County, through Dr. Bolin, had a custom, pattern, and practice of allowing undereducated and inadequately trained LVN's to assess, diagnose, prescribe medication, act as on-call nurses, and make final treatment decisions. *Id.* Even assuming Dr. Bolin's standing order may be considered a "policy" for purposes

of § 1983, the Court has previously found that Dr. Bolin is not a final policymaker for the County. *See supra* pp. 12-13. The policy of an individual official cannot give rise to governmental liability, unless the official was one to whom the governing body had delegated final policymaking authority. *Pembaur*, 475 U.S. at 483; *Bennett*, 728 F.2d at 769. Similarly, Dr. Bolin's standing order does not fall within the single act exception because it was not implemented by a municipal actor with "final policymaking authority". *See Pembaur,* 475 U.S. at 480-81 (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability); *see also Bolton*, 541 F.3d at 548 ("It is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker.") (*citing Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).

Similarly, Plaintiff's new evidence in the form of Dr. Mendel and Nurse Moore's affidavits regarding the care provided to Chelsea Bowden in 2007 likewise fail to establish liability on behalf of the County. Plaintiffs argue that "subsequent acceptance of dangerous recklessness by a policy maker tends to prove his preexisting disposition and policy." Pls.' Mot. Leave File Add'l Evidence 4, ECF No. 217. Even assuming the new evidence establishes a policy of making the Jail's "unlicensed" staff practice medicine in violation of Texas law, the new evidence does not establish that such a policy was implemented by a final policymaker.

Therefore, because the Court finds that no genuine issue of material fact exists as to whether Plaintiffs have established a policymaker and official policy, custom, or practice, the Court need not address the third element of municipal liability regarding whether such a policy was the "moving force" behind a violation of Brown's constitutional rights.

**VI.    Conclusion**

Based on the foregoing, the Court hereby reconsiders and amends its Order of August 4, 2009 (ECF No. 176) denying Wichita County's Motion for Summary Judgment regarding Plaintiffs' claims under the Fourteenth Amendment brought under 42 U.S.C. § 1983. The Court finds that Dr. Bolin was not a policymaker for Wichita County, and, even if he were, there was not a policy in place which could have been the moving force behind Brown's death. Accordingly, the Court finds summary judgment is appropriate with respect to Plaintiffs' claims against Wichita County under the Fourteenth Amendment brought under 42 U.S.C. § 1983, and these claims are hereby **DISMISSED with prejudice.**

**SO ORDERED** this **26th** day of **April, 2011.**

_[signature]_
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**